had been a part of the contract, there would have been a liability for any delay beyond that time, unless it was occasioned by the act of God, or the public enemy; or was owing to the usual perils of navigation or fire, which are expressly excepted in the bills of lading. In strictness, the subsidence of the water in the Ohio river, which prevented the boat from passing over the falls, was not a cause of delay, which within any of these principles would excuse the carrier from the obligation imposed by law, to deliver the property within a reasonable time. It was practicable to have delivered the cargo at Cincinnati, by draying the molasses and sugar around the falls, and reshipping on other boats. But this would have been attended with very considerable expense to the carrier, and some loss and injury to the cargo. Was the carrier bound to incur this expense, and was he justified in detaining the property at the falls, awaiting a rise in the river? Apart from all extrinsic facts, there would seem to have been an obligation on the carrier to avail himself of all the means within his power, to forward the sugar and molasses to the consignees, in the fulfilment of his undertaking, according to the legal import of the bills of lading, to deliver them within a reasonable time. But it is insisted, that the uniform usage among those connected with the commerce of the Ohio and Mississippi rivers, either as shippers or carriers, sanctions a different construction; and that, in conformity with that usage, the libellant in these cases was justified in waiting at the falls, till there should be a stage of water that would enable the boat to pass up.

That evidence of such usage is admissible, seems clear upon the authorities applicable to the subject. It is well settled, that a written contract cannot be varied, controlled, or contradicted by parol proof. But in the case of The Reeside [Case No. 11,657], Judge Story said, "the true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications or presumptions, and acts of a doubtful or equivocal character. It may also be admitted to ascertain the true meaning of a particular word, or of particular words in a given instrument, when the word or words have various senses," etc. In the case of Wayne v. The General Pike, 16 Ohio, 421, it was held, that where terms used in a bill of lading, have by usage acquired a particular signification, the parties will be presumed to have used them in that sense; but usage will not be permitted to control the terms used, unless it is established by clear and satisfactory proof; other decisions to the same effect have been made, to which it is not deemed necessary specially to refer. At this day, there can be no doubt, that proof

of usage is admissible in explanation of the intention of the parties, if that intention is doubtful or equivocal. And when clearly proved, it will be regarded as in the contemplation of the parties, at the time the instrument was executed, and as virtually embodied in it. In 1 Pars. Cont. p. 661, it is said, that "usage so long established, so uniform, and so well known, that it may be supposed the parties to the contract knew it, and referred to it, becomes, as it were, a part of the contract, and may modify in an important manner the rights and duties of the parties."

The evidence of a usage fixing the meaning and construction of the words, privilege of reshipping, fully meets the requirement of these authorities. A number of witnesses, of high standing and intelligence, and great experience, in the commerce and business of the west, embracing both shippers and carriers, say, that this phrase has been known to them for many years; and that when used in shipments from below, to any point above the falls of the Ohio, it is intended for the benefit of the carrier; leaving it to his choice to reship or not, as he may deem most for his interest; but it is never understood as creating an obligation to reship. These witnesses say, in reference to the obstruction at the falls of the Ohio, the words not only do not import the duty of reshipping, but that in case of inability to pass the falls from low water, the carrier incurs no liability for the detention, though it should be for an entire season. And several of the witnesses testify, that in all cases where it is intended to impose the obligation to reship, the words, "to be reshipped," are uniformly used. The proof therefore of a well known and established usage, in the particular referred to, is full and satisfactory. It results, that the libellant has not violated his contract by detaining his cargo at the falls for the period of something more than thirty days, and is therefore entitled to a decree for full freight to Cincinnati, according to the rates specified in the bills of lading, with interest thereon from the time it accrued.

=====

BROADWELL v. KEYS. See Case No. 1,-910.

BROADWELL (LEWIS v.). See Case No. 8,319.

=====

## Case No. 1,911.

### BROADWELL v. McCLISH et al.

[1 Cranch, C. C. 4.][1]

Circuit Court, District of Columbia. April Term, 1801.

EVIDENCE—BEST AND SECONDARY—ABSENCE OF SUBSCRIBING WITNESS.

The fact that the plaintiff's counsel had made diligent inquiry and could not hear where the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

subscribing witness lived, is not sufficient to dispense with his testimony, if it appears that he was in the country.

[See Clarke v. Courtney, 5 Pet. (30 U. S.) 319; Cooke v. Woodrow, Case No. 3,181; Sampson v. Johnson, Id. 12,281; Whann v. Hall, Id. 17,478; Rhodes v. Rigg, Id. 11,-749.]

At law. Assumpsit [by Simon Broadwell] against the defendants [McClish and Wolves], as indorsers of James Patterson's note.

There was a subscribing witness to the note, and in order to induce the court to dispense with proof by the subscribing witness, E. J. Lee, counsel for the plaintiff, made affidavit that he had made diligent inquiry and could not hear where the subscribing witness lived. The defendant produced a witness who testified that he saw the subscribing witness in Baltimore last February, and that he was working at his trade there.

THE COURT refused to dispense with his testimony, and the plaintiff became nonsuit.

---

## Case No. 1,912.

### BROCK v. HOPPOCK.

[2 N. B. R. (1868) 7 (Quarto, 2).][1]

District Court, S. D. New York.

BANKRUPTCY — INVOLUNTARY—PETITION—ACT OF BANKRUPTCY—"LEGAL PROCESS."

1. Although the letter of the United States bankrupt act of 1867 [14 Stat. 537] would seem to throw the burden of proof upon the debtor to disprove the facts set forth in the petition filed against him, the creditor ought to be compelled to make out his case as in any other issue.

[Distinguished in Re Skelley, Case No. 12,-921. Questioned in Re Price, Id. 11,411.]

2. An examination in supplementary proceedings under section two hundred and ninety-two of the Code of the state of New York is "legal process" within the meaning of section thirty-nine of the bankrupt act.

[Cited in Re Merchants' Ins. Co., Case No. 9,441.]

In bankruptcy. The creditor [Brock] presented his petition under the provision in section thirty-nine of the act which authorizes the creditor to proceed against the debtor and have him declared a bankrupt in case he "shall conceal himself to avoid the service of process in an action for the recovery of a debt or demand provable under the act." The debtor [Hoppock] appeared by counsel and demanded a trial by jury. On the trial the debtor's counsel contended that, notwithstanding the forty-first section of the act provides, "that if upon such hearing and

---

[1] [Reprinted by permission.]

---

trial the debtor proves to the satisfaction of the court or the jury that the facts set forth in the petition are not true," still although the letter of the statute would seem to throw the burden of proof upon the debtor to disprove the facts set forth in the petition, yet the petitioner ought to be compelled to make out his case as in any other issue.

BLATCHFORD, District Judge, construed the statute as contended for, and directed the creditor to establish his debt before proceeding to show acts of bankruptcy. The creditor then proved his debt and showed acts tending to prove concealment on the part of the debtor to avoid the service of process. The creditor showed that a number of judgments had been rendered against the debtor, and executions returned, and that orders had been made for the debtor's examination on proceedings supplemental to execution, and that upon attempts to serve such orders the debtor could not be found at his residence or usual place of business.

Mr. Charles Tracy, for the debtor, contended that such an order was not a process. The court held that such an order was a legal process within the meaning of the act.

Mr. Amos G. Hull, counsel for the creditor, then proved that a summons and complaint upon a foreign judgment for ten thousand dollars, in behalf of the petitioner, had been placed in the hands of one of his clerks to be served, and also in the hands of a deputy of the sheriff of the city and county of New York; and that neither his clerk nor the deputy had been able, after numerous efforts, to find the debtor from the 9th of March to the 2d of May. There were numerous witnesses called on behalf of the creditor, tending to show that the friends and relatives of the debtor had stated that he had gone west, but had refused to state where west.

Mr. Tracy cited in debtor's behalf, 1 Wash. C. C. 29 [Barnes v. Billington, Case No. 1,-015]; 4 How.

Mr. Hull, on the question of concealment, cited 12 Barb. 265; 9 East, 487; 2 Com. Dig. tit. "Bankruptcy," C.

The jury found a verdict in favor of the creditor, and that the debtor committed the act of bankruptcy set forth in the creditor's petition.

Hull and Childs, for creditor.
Haddock, Tracy & Olmstead, for debtor.

---

## Case No. 1,913.

### BROCK v. The JOHN M. WALSH.

[The case reported under above title in 24 Int. Rev. Rec. 207, is the same as Case No. 7,359.]